UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ARCHERA VENTURE CAPITAL, LLC** | **CASE NO. 2:22-CV-02108** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WEST AMERICAN INSURANCE COMPANY** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment (Doc. 26) filed by the Defendant, West American Insurance Company ("West American"). Plaintiff, Archera Venture Capital, LLC and Institute for Neuropsychiatry ("Archera")[1], opposes the motion. Doc. 29.

BACKGROUND INFORMATION

This case arises from damages caused by Hurricanes Laura and Delta. Hurricane Laura made landfall in Southwest Louisiana on August 27, 2020. Seven weeks later, Hurricane Delta struck the same area on October 9, 2020. Archera operates a medical clinic in Lake Charles, Louisiana. West American provided commercial insurance to Archera under a policy bearing the number BKW 58273002, insuring two buildings located at 2829 and 2827 4th Avenue, Lake Charles, Louisiana. Doc. 26-7 at ¶ 1. The "Building Coverage" lists the two buildings as separate locations with each location limited to $2,437,104 for replacement costs for a combined total of $4,874,208. Doc. 26-1 at 11, 13.

---

[1] The Institute for Neuropsychiatry is a separate professional medical corporation. Doc. 1 at ¶ 1B. It operates in the same location as Archera. *Id.* at ¶ 5. For ease of reference, the Court will only refer to Archera as the Plaintiff.

Archera sustained significant damage to the two buildings. Doc. 1 at ¶ 12. Archera alleges that despite providing West American with notice of its loss and cooperating with inspections, West American has failed to provide adequate payments to cover the costs of repairs. *Id.* at ¶¶ 18-20. Archera filed suit on July 15, 2022, asserting claims for breach of contract and bad faith damages under Louisiana Revised Statutes §§ 22:1892 and 22:1973. *Id.* at ¶¶ 34-38, 39-45. America West denies that it is in breach of the insurance contract or that it processed the claim in bad faith. Doc. 13.

America West now moves for partial summary judgment. Doc. 26. American West argues that there is a policy limit of $4,874,208 covering the two buildings and requests the Court to find that Archera is limited to recovering a maximum of $4,874,208 total for damage to the buildings. *Id.* at 2. Archera counters that it made separate claims for Hurricanes Laura and Delta, and the policy provides a limit of $4,874,208 per occurrence for a total of $9,748,416 in this case. Doc 29 at 2; Doc. 29-7 at 6.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities

in the policy must be construed against the insurer and in favor of coverage. *Id.* at 517. The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

The Court has previously addressed a plaintiff attempting to double the policy limits based on damages from Hurricanes Laura and Delta on several occasions, beginning in *Touchet v. United Property & Casualty Insurance Co.*, as follows:

> As it relates to Coverage A, the court disagrees. "Louisiana law does not allow for double recovery of the same element of damages," which is in the nature of a punitive or exemplary award." *Albert v. Farm Bureau Ins. Co.*, 940 So.2d 620, 622 (La. 2006). The policy covers only one dwelling and the limits under Coverage A represent the replacement cost for that dwelling, as agreed to by plaintiffs when they purchased the policy. The court allows that recovery under separate policy limits would be justified in the event that plaintiffs had begun repairs following one occurrence and then suffered additional damage in the second. Here, however, plaintiffs have admitted that they made no repairs to the dwelling. Accordingly, holding UPC liable for two policy limits covering the same dwelling would amount to exemplary damages. Plaintiffs already have such a remedy available under Louisiana Revised Statutes §§ 22:1892 and 22:1973, and the motion must be granted in this regard.

*Touchet*, 2022 WL 710621, at *2 (W.D. La. Mar. 9, 2022); *accord Schumacher v. United Property & Cas. Ins. Co.*, 2022 WL 3330085, at *3 (W.D. La. Aug. 11, 2022); *First Assembly of God Church Inc. of Leesville, La. v. Church Mut. Ins. Co.*, 2023 WL 4167096, at *3 (June 23, 2023).

The controlling inquiry in this matter is whether repairs for Hurricane Laura were later damaged by Hurricane Delta. Indeed, this Court has stated "in the absence of any claim for repairs made under Laura coverage that must have been redone due to damage caused by Delta, there is no basis for doubling policy limits or otherwise attempting to

segregate the damages at this time." *Alpha Dev. Grp. LLC v. Liberty Mut. Ins. Co.*, 2022 WL 6850097, at *3 (W.D. La. Oct. 11, 2022).

As noted above, West American asks the Court to grant partial summary judgment limiting Archera to a maximum recovery of $4,874,208, the policy limit for the two buildings. Doc. 26 at 1. West America argues that no repairs were made between Hurricane Laura and Hurricane Delta, only mitigation to remove debris and dry out the buildings. Doc. 26-6 at 4; Doc. 26-2 at ¶ 5. West American states that it has paid Archera a total of $4,094,068.21[2] under the building coverage and because no repairs were made between the two hurricanes, it contends that only $863,693.21 remains available under the policy limit. Doc. 30 at 5. West America is particularly concerned about Archera's additional claims for new elevators and HVAC systems for the buildings, which include estimates well beyond the amount remaining under a single policy.[3] Doc. 26-6 at 2.

Archera argues that it is entitled to coverage for damages sustained during Hurricane Delta, as a separate occurrence under the policy. Doc. 29. Archera notes that it performed mitigation services and debris removal between the two hurricanes, which it argues should be considered repairs. Doc. 29-7 at 3. Archera maintains Hurricane Delta damaged the temporary roofs of both buildings that were installed after Hurricane Laura, which allowed

---

[2] Archera disputes this amount and states that West American has only paid $3,976,104.38 under the policy's building coverage. Doc. 29 at 2, 5.

[3] On September 8, 2022, Archera provided an estimate from Links Contractors including: $2,051,999.50 to replace the HVAC in both buildings, (2) $534,642 to replace the elevator systems, and (3) $32,944 for additional miscellaneous repairs. Doc. 26-6 at 2; Doc. 26-2 at 4. On July 17, 2023, Calcasieu Mechanical Contractors provided an updated quote of $2.5 million to demo and replace the HVAC systems in both buildings. Doc. 26-5 at 85-88.

the intrusion of water that caused damage to interior floors, doors, and wall panel systems. Doc. 29 at 5; Doc. 29-5.  Archera also notes that in addition to mitigation services, it had to perform electrical safety checks and HVAC repairs after Hurricane Delta.  Doc. 29 at 5.  For these reasons, Archera argues that genuine issues of material fact remain over whether one or two policy limits should apply in this case.  *Id.*

In response, West America admits that water entered the buildings during Hurricane Delta through openings created by Hurricane Laura.  Doc. 30 at 2.  However, West America notes that when Hurricane Delta occurred the mitigation process from Hurricane Laura had not concluded, and no repairs had been made.  *Id.*  For this reason, West America maintains that additional mitigation does not increase the total replacement cost of the buildings under the policy limit, and requests summary judgment limiting Archera to recovery under one policy building limit.  *Id.* at 3.

The Court agrees with West American.  The question is not whether Hurricane Delta caused damage to the property as detailed by Archera.  Neither party disputes that additional damage occurred when water entered the building during Hurricane Delta.  Rather, the question is whether Hurricane Delta damaged property that had already been repaired after Hurricane Laura.  Aside from mitigation, no repairs were made prior to Hurricane Delta.  Because no repairs were made to the building, it would amount to exemplary damages if West American were liable for two policy limits covering the same buildings.  As such, West America's motion for partial summary judgment will be granted on this issue.  To the extent the parties disagree concerning the calculation or amount of

building replacement coverage remaining under a single policy limit, that determination will be left to the jury.

## CONCLUSION

For the reasons stated above, America West's Motion for Partial Summary Judgment (Doc. 26) will be **GRANTED IN PART** concerning the limitation of coverage to a single building replacement policy. The motion will be **DENIED IN PART** as to the application or amount of coverage remaining.

**THUS DONE AND SIGNED** in Chambers on this 20th day of March, 2024.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE